Sibbie **DEAL** and Calvin
Lucas, Plaintiffs,

v.

Newell **SPEARS** and Juanita Spears
d/b/a White Oak Package Store,
Defendants.

Civ. No. 90–1102.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Dec. 16, 1991.

Don Gillaspie, El Dorado, Ark., for plaintiffs.

Allen P. Roberts, Camden, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

A trial before the court was held on the above styled action on August 14, 1991. Upon completion of the testimony the court took the case under advisement and directed the parties to submit briefs to the court. The court has received the briefs from the parties and a transcript of the proceedings. This matter is now ripe for consideration.

This action was filed by the plaintiffs on August 29, 1990, pursuant to 18 U.S.C. § 2520. This section provides for the recovery of civil damages for violations of 18 U.S.C. § 2511. This portion of the United States Code is commonly referred to as the Omnibus Crime Control and Safe Streets Act of 1968. This court has jurisdiction over this matter pursuant to 18 U.S.C. § 2520, 28 U.S.C. § 1331 and § 1346. Each plaintiff seeks $10,000.00 in statutory damages from each of the defendants as well as punitive damages and attorney fees.

## SUMMARY OF FACTS

Sibbie Deal was an employee of the White Oaks Package Store ("liquor store") located near Camden, Arkansas. She began her employment at the liquor store on December 31, 1989. The store is owned and operated by Newell and Juanita Spears. Newell and Juanita are husband and wife. Their residence is directly adjacent to the liquor store.

On or about April 21, 1990, the liquor store was broken into and approximately $16,000.00 was stolen. The Spears suspected that the theft might have been an "inside job" orchestrated by one of the employees of the liquor store. Both Newell and Juanita indicated in their testimony that they suspected Sibbie Deal of being involved in the theft. The Spears decided that they would use a recording device to monitor the telephone calls to and from the liquor store. They hoped that an employee would make an admission about the theft. Newell Spears in his deposition stated that he asked a Sheriff's Department Investigator named Cope his opinion about recording calls at the liquor store. Investigator Cope responded that he did not "see anything wrong with that." [1] The testimony of the Spears indicates that the taping also served to monitor the number of personal calls made by the employees of the liquor store.

In May of 1990 Newell Spears purchased a recording device to intercept and record telephone calls to and from the liquor store. This machine did not work as he

---

1. The deposition of Newell Spears was taken on November 20, 1990, and introduced as plaintiff's exhibit # 3. The following exchange between Mr. Spears and the Plaintiffs' attorney is reported at page 4 of Newell Spears' deposition.

    A. Cope came by there lookin' for somebody to serve a warrant on one day.... I suggested to him I thought I might put a recorder on the telephone and it might help me find out who broke into the store.

    Q What did he say?

    A. He said I don't see anything wrong with that. That's all that was said about it.

had hoped, so he purchased a second machine on or about June 25, 1990. The second recording device was hooked up in the Spears' residence.[2] The liquor store and the residence shared a single telephone line. The residence contained an extension of the business telephone line.

The recording machine used by Newell Spears worked in such a way that it automatically recorded all incoming and outgoing telephone calls onto audio cassette tapes. The machine would work in such a way that the persons speaking on the phone would not hear it turn on or off. There was no "clicking" sound as can be heard when an extension phone has been picked up.

The interception and taping of calls at the liquor store occurred from June 27, 1990, through August 13, 1990. On August 13, 1990, Sibbie Deal was terminated by the Spears. The Spears had heard through the use of their recorder that Sibbie Deal sold a keg to Calvin Lucas at a reduced price. On August 13, 1990, with Sibbie and two other employees in the liquor store the Spears played a portion of a taped conversation between Sibbie Deal and Billy Atkins. The conversation dealt with Sibbie asking Mr. Atkins to state that he had purchased a keg if anyone asked him. The keg had been purchased secretly by Calvin Lucas at a discounted price. After playing the tape containing the conversation of Sibbie and Mr. Atkins the Spears terminated Sibbie.

On September 3, 1990, Deputy Marshal Herman H. Higgs seized the Spears' recorder and fifteen 90 minute cassette tapes. The seizure of these items was pursuant to an order entered August 30, 1990, by this court.

The gravamen of the plaintiffs' complaint relates to the contents of the cassette tapes and the dissemination of the contents to other individuals by the Spears. It is helpful to examine the nature of the conversations that were recorded by the Spears.

At the time that Sibbie Deal was working at the liquor store she was married to Mike Deal. They separated during this period of time and subsequently obtained a divorce.

Sibbie Deal was having an extramarital affair with Calvin Lucas while she was employed at the liquor store. Sibbie regularly called Calvin on the telephone located in the liquor store. Calvin Lucas testified to as many as three calls a day. Mr. Lucas is not employed due to a 100% disability. Many of these calls were intercepted and recorded by the Spears' recorder. Many of the conversations between Sibbie Deal and Calvin Lucas were characterized as sexually provocative in nature.[3] This can be described as a case of sex, lies and audio tapes.

Calvin Lucas was married to Pam Lucas (now Pam Whelan) at the time. The plaintiffs assert that the Spears disclosed to people, including Mike Deal and Pam Whelan the existence of the taped conversations between Sibbie Deal and Calvin Lucas.

Mike Deal was informed about the nature of the taped conversations by Juanita Spears. As a result, Mike Deal contemplated murdering Calvin Lucas.[4]

Pam Whelan was told by Mike Deal and Juanita Spears of the conversations between Sibbie and Calvin. Pam Whelan testified that Juanita Spears told her that if

---

**2.** Plaintiff's exhibit 1 indicates that the second recorder was purchased from Radio Shack in Camden, Arkansas, on June 25, 1990. The recorder is described as a "CTR–73 Recorder" with the stock # 14–1053.

**3.** Calvin Lucas testified that the conversations were generally of the same content as conversations they would have had in the bedroom together. (TR. 131). Sibbie Deal testified that she and Calvin spoke of "our sex life, what was going on between us; things that happened in his life and my life." (TR. 86).

**4.** Mike Deal's testimony by a deposition taken on June 14, 1991, was introduced as plaintiffs' exhibit 2. Mike Deal stated that after hearing about the tapes from Juanita Spears he borrowed a gun and went to Calvin Lucas' home with the intent of committing murder. He changed his mind after waiting several hours for Lucas to return and considering the effect of Lucas' death on Lucas' infant daughter. (Depo. 10–11).

Sibbie Deal did not drop a Worker's Compensation suit against the liquor store things were going to "get really ugly." (TR. 53). Juanita told Pam that she would be hurt when everything "comes out" and that Pam should not hear the tapes because "it would just make things worse." (TR. 53).

In addition to the taping of the sexually provocative conversations Newell Spears recorded conversations between Sibbie Deal and her family members. Some of her relatives were local and some were in other states when Sibbie was speaking with them on the liquor store telephone.[5]

Newell Spears admits that he recorded the above-referenced conversations. Juanita listened to hours of the conversations while Newell was playing the tapes. Newell testified that he listened to each tape in its entirety. Juanita testified that Newell sometimes listened to the tapes in the bathroom, but also listened to the tapes in the living area of the residence. Juanita Spears admits that she referred to the taped conversations in two conversations with Pam Whelan and one conversation with Mike Deal. Neither of the Spears took any steps to limit the extent of their intrusion on the privacy of the plaintiffs and the other individuals that were taped.

## OMNIBUS CRIME CONTROL AND SAFE STREETS ACT

■ This action is brought pursuant to the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. §§ 2510–2520. The defendants acknowledge that these statutes apply to this case and that liability exists unless their conduct comes under a statutory exception. In summary, 18 U.S.C. 2511 makes it unlawful for any person to willfully intercept, use, or disclose any "wire, oral, or electronic communication." Interception, use or disclosure of telephone conversations comes under the prohibited activity detailed in this statute. *Bess v. Bess,* 929 F.2d 1332 (8th Cir.1991).

■ If a violation of 18 U.S.C. § 2511 occurs the persons whose conversations were illegally monitored can seek civil damages under 18 U.S.C. § 2520. The pertinent part of 18 U.S.C. § 2520 is as follows:

(a) **In general**—Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

(b) **Relief**—In an action under this section, appropriate relief includes—

(1) such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) **Computation of damages**—

(2) In any other action under this section, the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is greater of $100 a day for each day of violation or $10,000....

The Supreme Court has stated that, "[t]he purpose of the legislation ... was effectively to prohibit ... all interceptions of oral and wire communications, except those specifically provided for in the Act...." *U.S. v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974); *Kempf v. Kempf,* 868 F.2d 970, 972

---

5. In the trial transcript at page 64 the following exchange between the Plaintiffs' attorney and Sibbie Deal is reported:

Q. And you had conversations besides your conversations with Calvin....

A. I talked to my husband; I talked to my son; my daughter-in-law. I talked to my broth-ers. I've got one in Alabama, I've got one in Chicago, I've got one in Las Vegas, I talked to them. I talked to my sisters.

Q. Are those people long-distance?

A. I talked on long-distance. I mean, they've called me at work or I'd call them....

(8th Cir.1989). The only way that the defendants can escape liability for taping and disclosing the contents of the plaintiffs' conversations is for their conduct to fall within one of the exceptions to the statute.

## DEFENDANTS' DEFENSES

The Spears have asserted essentially two defenses. The weakest by far is that Sibbie Deal impliedly consented to the taping of her phone calls.[6] The First Circuit Court of Appeals extensively discussed the implied consent issue in the case of *Griggs-Ryan v. Smith*, 904 F.2d 112 (1st Cir.1990). "The circumstances relevant to an implication of consent will vary from case to case, but the compendium will ordinarily include language or acts which tend to prove (or disprove) that a party knows of, or assents to, encroachments on the routine expectation that conversations are private." 904 F.2d at 117.

■ The defendants base their implied consent defense on threats from Newell Spears that he "might" put in a pay phone or "monitor" employee phone calls. These two courses of action were suggested by Newell as a way to curb excessive phone use by the employees.

This implied consent argument flies in the face of cognitive reasoning. Seeking information about the theft was the primary reason for installing the recorder according to the Spears' testimony. No sane person would admit to involvement in a $16,000.00 theft while speaking on a phone they believed was tapped. Sibbie Deal would not discuss with Mr. Atkins the discounted keg purchase on a phone she believed to be tapped. The conversation between Sibbie Deal and Atkins cost Sibbie her job. Sibbie Deal and Calvin Lucas would not engage in sexually provocative discussions on a phone that they believed to be tapped. The testimony indicated that the plaintiffs believed that their conversations were private. The court specifically finds that both of the plaintiffs had a reasonable expectation that their telephone conversations were private.

Newell and Juanita Spears intentionally kept the taping of the employee phone calls a secret. Newell Spears' occasional complaints about excessive phone usage and threats to monitor calls or put in a pay phone fall short of notice to the plaintiffs of a tapped phone. Newell Spears could have effectively discontinued personal calls by employees if he had announced that he was tapping the phone and recording the calls.

■ The next defense raised by the Spears is that the use of the telephone extension to tape the calls of employees was an action taken in the ordinary course of business. This defense is commonly referred to as the "extension telephone exception". *Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414 (5th Cir.1980).[7] The "extension telephone exception" applies if the interception by the Spears occurred on a telephone being used "in the ordinary course of its [the liquor store's] business."[8] This exception does not require the consent of the participants to the intercepted conversation. 630 F.2d at 419; *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir.1983).

---

**6.** 18 U.S.C. § 2511(2)(d) provides: It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

**7.** Circuit Judge Goldberg writing for a three judge panel summed up the difficulty of interpreting the language of 18 U.S.C. §§ 2510-2520. "We might wish we had planted a powerful electronic bug in a Congressional antechamber to garner every clue concerning Title III, for we are once again faced with the troublesome task of an interstitial interpretation of an amorphous Congressional enactment." *Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414, 415 (5th Cir. 1980).

**8.** 18 U.S.C. § 2510(5)(a)(i); *Briggs*, 630 F.2d at 417.

The *Briggs* case involved a supervisor using an extension to monitor a phone call between an employee and a business competitor. The supervisor had particular suspicions about the conversation he monitored and had warned the employee not to disclose certain confidential information to the competitor. The Fifth Circuit Court of Appeals held that the monitoring of this one business related phone call was within the ordinary course of business.[9]

The *Watkins* case dealt with a personal call received by an employee from a friend during her lunch hour. Watkins and her friend discussed a job interview that Watkins had been on the previous day. Unbeknownst to Watkins or the friend a supervisor was listening-in to the conversation from another part of the office building.[10] The subsequent confrontation between Watkins and the supervisor resulted in the termination of Watkins. Circuit Judge Edward S. Smith wrote the opinion in *Watkins* for the Eleventh Circuit Court of Appeals. "[A] personal call may be intercepted in the ordinary course of business to determine its nature but never its contents." 704 F.2d at 583. "[The supervisor] was obliged to cease listening as soon as she had determined that the call was personal, regardless of the contents of the legitimately heard conversation ... It is not necessary to recovery of damages that the violator hear anything in particular; she need do no more than listen." 704 F.2d at 584.

The *Watkins* case is relied on in the case of *Epps v. St. Mary's Hosp. of Athens, Inc.*, 802 F.2d 412 (11th Cir.1986). In *Epps* the Eleventh Circuit held that the telephone extension exception applied to the monitoring of a call between co-workers making "scurrilous remarks about supervi-

sory employees in their capacities as supervisors." 802 F.2d at 417.

The co-workers were conversing during work hours on a specialized extension that connected different sections of a hospital complex. The court noted that the employer had an interest in the "potential contamination of a working environment." 802 F.2d at 417. In *Epps* the court held after considering the surrounding circumstances that the intercepted conversation was not a personal call.

The case before this court is much different from the cases cited by the parties in their briefs. The vast majority of the calls that the Spears intercepted were not business related. The conversations that were disclosed by Juanita Spears to Pam Whelan and Mike Deal were personal in nature. The Spears did not take any steps to limit their intrusion on the privacy of the callers. The taping and disclosing of the sexually provocative discussions of the plaintiffs served no legitimate business purpose. The court specifically finds that the defendants are not excluded from liability for their actions by the "extension telephone exception."

The Eighth Circuit Court of Appeals recently upheld a finding of liability by one spouse for intercepting and disclosing an estranged spouse's telephone conversations. *Bess v. Bess*, 929 F.2d 1332 (8th Cir.1991). Prior to the separation of the couple Mr. Bess attached a hidden tape recorder to a telephone line located in the basement of the marital residence. Mrs. Bess discovered the device and filed suit against Mr. Bess under the Omnibus Crime Control and Safe Streets Act. The action was filed prior the 1986 amendment to the Act. Statutory damages for actions filed prior to the 1986 amendment were limited

---

**9.** Circuit Judge Goldberg noted: "First, the plaintiffs themselves submitted an affidavit that this was a business, not a personal, call ... Second, [the supervisor's] act of listening-in was limited in purpose and time ... Third, the act of listening-in was not part of a general practice of surreptitious monitoring." 630 F.2d at 420.

**10.** The plaintiff, Carmie Watkins, was hired by L.M. Berry & Company to solicit advertisers for

the South Central Bell Yellow Pages. Watkins' employer had an established policy of monitoring calls as part of the training program. Watkins was aware of the monitoring policy. The calls were reviewed with the employees to help improve sales techniques. The monitoring was done from an extension telephone line in the supervisor's office. 704 F.2d at 579.

to $100.00 per day or $1,000.00 whichever was greater. 929 F.2d at 1333.

At trial before a United States Magistrate Mrs. Bess introduced audio tapes containing the recorded conversations. She also introduced into evidence transcripts of the divorce proceeding containing references from Mr. Bess to information obtained from the intercepted tapes.

The Eighth Circuit upheld the Magistrates award of damages of $1,200.00 ($100 per day for each violation). Senior Circuit Judge Bright, writing for the three judge Eighth Circuit panel, awarded an additional $100.00 for the disclosure that Mr. Bess made in the divorce proceedings. 929 F.2d at 1334. The court upheld the Magistrate's denial of punitive damages stating that Mrs. Bess had failed to prove a "wanton, reckless or malicious violation." [11]

## LIABILITY

The court finds that the Spears are liable to the plaintiffs for damages for intercepting telephone conversations and disclosing the contents of these conversations. None of the asserted defenses excuse the conduct of either of the defendants.

■ Newell Spears admitted that he purposely recorded the telephone conversations between the plaintiffs. Juanita Spears also testified that the recording was done intentionally. (TR. 30–31). No action was taken by either defendant to limit the scope of their intrusion on the privacy of the plaintiffs and the other people whose conversations they recorded. The liability of Newell Spears to both plaintiffs is unavoidably clear.

■ The defendants argue in the alternative that Juanita Spears is not liable to the plaintiffs because she did not take an active role in recording the telephone calls. This assertion ignores the portion of the statute that forbids disclosure of intercepted telephone calls. *Bess v. Bess*, 929 F.2d at 1334. Juanita Spears intentionally disclosed the existence and the nature of the tapes to Mike Deal and Pam Whelan (the plaintiffs' spouses). Juanita Spears' liability to both of the plaintiffs is equally as clear as that of Newell Spears.

## STATUTORY DAMAGES

Having found that both defendants are liable for damages to each plaintiff the court will assess statutory damages as provided by 18 U.S.C. § 2520(c)(2)(B).[12] Newell Spears is liable to Sibbie Deal for statutory damages in the amount of $10,000 for intentionally intercepting and recording her telephone conversations. Newell Spears is liable to Calvin Lucas for statutory damages in the amount of $10,000 for intentionally intercepting and recording his telephone conversations. Juanita Spears is liable to Sibbie Deal for statutory damages in the amount of $10,000 for intentionally disclosing the contents of the intercepted conversations. Juanita Spears is liable to Calvin Lucas for statutory damages in the amount of $10,000 for intentionally disclosing the contents of the intercepted conversations.

## PUNITIVE DAMAGES

■ In the *Bess* case the Eighth Circuit Court of Appeals examined the issue of punitive damages for actions brought under 18 U.S.C. §§ 2510–2520. In *Bess* the defendant testified "that he installed a tape recorder out of a belief that phone messages left for him were being withheld." 929 F.2d at 1335. The Eighth Circuit took

---

**11.** 929 F.2d at 1335. The Eighth Circuit cited *Jacobson v. Rose*, 592 F.2d 515 (9th Cir.1978). In *Jacobson* the Ninth Circuit Court of Appeals upheld a District Court's decision to limit a jury instruction relating to punitive damages holding that the evidence before the jury did not demonstrate that the violators acted wantonly, recklessly, or maliciously.

**12.** 18 U.S.C. § 2520(c) Computation of damages—

(2) In any other action under this section, the court may assess as damages ...

(B) statutory damages of whichever is greater of $100 a day for each day of violation or $10,000. ...

into account this explanation and other testimony to support the lower court's determination that punitive damages were inappropriate.

In the present case Newell Spears asked Sheriff's Department Investigator Cope his opinion before beginning the taping.[13] The testimony indicates that the taping was primarily because of the loss of $16,000.00 in a burglary at the liquor store. This is a substantial loss for any small business. The conduct of both of the defendants is inexcusable, but considering all of the surrounding circumstances is not "wanton, reckless, or malicious" and does not justify an award of punitive damages. 929 F.2d at 1334. This court specifically finds that punitive damages are not appropriate in this case.

## ATTORNEYS FEES

The plaintiffs' attorney has requested a fee of $25,000.00. He has offered no explanation or justification for this amount.

The court finds that the plaintiffs are entitled to a "reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2520(b)(3). The plaintiffs are directed to file a petition and affidavit for fees and costs with this court within twenty (20) days of the entry of this order. The defendants will have twenty days to file a response to the plaintiffs' petition.

---

**13.** This court does not treat a casual conversation with a sheriff's department investigator as carte blanche to violate privacy rights of other citizens. The conversation between Investigator Cope and Newell Spears indicates only that Mr. Spears made some inquiry into the legality of his action. A brief consultation with an attorney prior to beginning the taping probably would have prevented this mess.