Darrell RODGERS and Peter Simet,
Plaintiffs–Appellees,

v.

James C. WOOD, Defendant–Appellant.

No. 89–3059.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1990.

Decided Aug. 16, 1990.

Randall D. Crocker, Anna M. Pepelnjak, Lichtsinn, Haensel, Bastian, Erchul & Crocker, John H. Lindquist, Von Briesen & Purtell, Milwaukee, Wis., for plaintiffs-appellees.

James C. Wood, Milwaukee, Wis., pro se.

Before WOOD, Jr., and RIPPLE, Circuit Judges, CRABB, Chief District Judge.[1]

CRABB, Chief District Judge.

Appellees Rodgers and Simet brought this action under the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2520, contending that appellant Wood's disclosure of an unauthorized tape of their telephone conversation with a television news reporter violated the Act. The United States District Court for the Eastern District of Wisconsin granted a motion for summary judgment in favor of appellees and awarded statutory damages in the amount of $20,000. Appellant brings this appeal from the grant of summary judgment, the imposition of damages, and the denial of his motion for reconsideration. We affirm.

## I. FACTUAL BACKGROUND

Appellees Darrell Rodgers and Peter Simet are police officers with the Milwaukee County Police Department. On September 11, 1985, they were executing a search warrant at the home of one Robert LeVine. During the course of the search, they used a telephone in LeVine's barn to make calls to trace the model and serial

---

1. The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

numbers on some merchandise found during the search, and, in addition, to call a television news person, Allan May, who directs a program called "Crime Line Anonymous."

Unbeknownst to appellees, LeVine had an unauthorized recording device on the telephone in his barn and had recorded all of their calls, including the call to Allan May. From the conversation with May, it was apparent that appellees had contacted him previously and revealed the fact that they would be searching LeVine's residence for stolen goods. It is a violation of Wisconsin law to disclose the issuance of a search warrant prior to its execution.[2]

LeVine had placed the recorder on the line to ascertain who, if anyone, had been using his phones without his permission. LeVine gave tapes of the recorded calls to one of his attorneys, appellant Wood, who represented LeVine in a Waukesha County criminal action stemming from appellees' seizure of materials from LeVine's residence.

During the course of Wood's representation of LeVine, Wood disclosed the contents of the police officers' taped telephone conversation with Allan May on at least four occasions:

1. On an unknown date in 1987 to Allan May;

2. On July 16, 1987, to Waukesha County Assistant District Attorney Peg Tarrant, who prosecuted the case against LeVine;

3. On an unknown date in 1987 to certain representatives of the Milwaukee Police Department, in their capacity with the Internal Affairs Division; and

4. On July 17, 1987, to Waukesha County Circuit Judge Roger P. Murphy in a document filed for consideration in the sentencing of LeVine for the charges stemming from the execution of the search warrant.

Neither of the appellees gave Wood permission to disclose the contents of the tapes.

Ultimately, LeVine was sentenced to a term of imprisonment of four years for receiving stolen property in violation of Wis.Stat. § 943.34.

On January 21, 1988, appellees filed a suit in the United States District Court for the Eastern District of Wisconsin, contending that Wood's disclosures of the unauthorized tape of their telephone conversation with Allan May violated the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511(1)(c), which prohibits intentional disclosure of the contents of a wire communication that was obtained in violation of the Act. 18 U.S.C. § 2520 creates a private cause of action for anyone whose wire communications are disclosed in violation of the Act.

In opposing the motion for summary judgment, Wood stipulated to the facts that the wire communication was unauthorized under the Act and that it was disclosed without permission. He argued that his disclosures were protected by common law privileges attaching to persons reporting criminal activity and by an attorney-client privilege. The district court rejected the application of these common law defenses and granted plaintiffs' motion for summary judgment. In a subsequent order, the court imposed statutory damages of $20,000 pursuant to 18 U.S.C. § 2520(c)(2)(B).

Wood moved for reconsideration of the court's decision to grant summary judgment to the plaintiffs, raising several statutory defenses. He averred that he had failed to raise the defenses previously because his "attention was focused on his equitable defense of 'privilege' which substantially distracted him from the painstaking scrutiny of facts ... as well as the interplay of 18 U.S.C. § 2510, 2511, and 2520." The court denied defendant's motion for reconsideration, ruling that defendant had not shown excusable neglect for failing to raise the statutory defenses earlier and that defendant's arguments were "mainly specious, and involve inaccurate

**2.** Wis.Stats. § 946.76 provides

Whoever discloses prior to its execution that a search warrant has been applied for or issued, except so far as may be necessary to its execution, is guilty of a Class E felony.

readings of the relevant statutes [and] incorrect readings of the law." *Rodgers v. Wood*, No. 88–C–0069, slip op. at 5 (E.D. Wis. Sep. 6, 1989).

## II. DISCUSSION

### A. Common Law Privileges

Wood urges this court to recognize exceptions to the Omnibus Crime Control Act based on two common law privileges. The first is a state law privilege that operates as a defense against libel or slander. In *Bergman v. Hupy*, 64 Wis.2d 747, 221 N.W.2d 898 (1974), the Wisconsin supreme court held that there is an absolute privilege against civil suit for statements made to a district attorney in the course of the investigation of a crime and a conditional privilege for statements made without malice to police officers in the course of the investigation of criminal activity. The purpose of the privileges is to promote the interest of justice in apprehending and convicting criminals. *Id.* at 751, 221 N.W.2d at 901.

Appellant Wood cites *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.1974), in support of his argument that we should recognize as defenses to suit under the Omnibus Crime Control Act the common law privileges protecting statements made to law enforcement agents. In *Simpson*, the Court of Appeals for the Fifth Circuit held that the Omnibus Crime Control Act did not provide a remedy for a husband's interception of his estranged wife's telephone conversations with third parties. The court reasoned that the language of the Act is not sufficiently definite to give notice that such action is illegal and its legislative history "focus[es] on crime control ... [and] contains no clear indication that Congress intended to intrude into the marital relation within the marital home." *Id.* at 807.

■ Although *Simpson* can be interpreted to read a common law marital privilege into the Omnibus Crime Control Act, the reasons for recognizing a marital privilege provide no support for recognizing a similar exception for the common law privileges protecting statements made to law enforcement agents in furtherance of criminal investigations. The very nature of the Act is to impose limitations on the effectiveness of law enforcement agents in the interests of protecting the privacy of citizens. For example, the Act provides that the contents of unauthorized recordings or evidence derived from them may not be entered into evidence in any trial. 18 U.S.C. § 2515. The Act represents Congress's careful balancing between the interests of the enforcement of criminal laws and the assurance of privacy in oral and wire communications. To recognize a common law privilege as Wood suggests would upset that balance.

■ Second, appellant requests us to recognize an exception based on the attorney-client privilege. This request amounts to an argument that because a client gives an attorney some information in confidence, the attorney has the right to disclose that information to anyone. Merely to state the argument is to disclose its lack of merit.

Therefore, we affirm the district court's refusal to recognize these common law privileges as defenses in a civil suit under the Omnibus Crime Control Act.

### B. Imposition of Statutory Damages

■ The civil damages provision for the Omnibus Crime Control Act provides that

> any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). "Appropriate relief" is defined as including damages under subsection (c), which is entitled "Computation of Damages" and provides two rules for computing damages. One rule applies only to private viewing of a private satellite video communication that is not scrambled or encrypted. The other rule, applies to "any other action under this section" and states,

The court may assess as damages whichever is the greater of—

> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
>
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2).

Appellant argues that this damages section should be read to give the district court discretion either to impose the greater of actual or statutory damages or to impose no damages at all, if the case so warrants. The district court rejected this argument. Although the court noted that the statute provided appellees with a "windfall" resulting from their illegal activity in contacting television reporter Allan May, it believed it had no choice but to impose statutory damages of $20,000.

The word "may" in 18 U.S.C. § 2520(c)(2) is ambiguous. It is unclear whether it is intended to grant district courts the discretion to withhold an award of damages in cases in which a violation is found but damages would be inappropriate.

The legislative history of 18 U.S.C. § 2520(c)(2) could support an inference that Congress intended to permit district courts the discretion to impose no damages. Before its amendment in 1986, the damages section clearly precluded such discretion. The previous wording of the statute was as follows:

> Any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter *shall* (1) have a civil cause of action against any person who intercepts, discloses, or uses ... such communications, and (2) be entitled to recover from any such person—
>
> (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation of $1,000, whichever is higher;

18 U.S.C.A. § 2520 (West 1970) (emphasis added). In 1986, Congress increased tenfold the amount assessed as statutory damages for violations of the Act and changed the mandatory language in the former § 2520 to the permissive language found now in § 2520(c)(2). From these changes, it is possible to infer that Congress intended to increase the penalties for violations, but to permit defendants to escape the increased penalties if their actions did not warrant so severe a sanction.

Although it is tempting to do so, we do not draw this inference for two reasons. First, there is nothing in the legislative record explaining why Congress made the change from the word "shall" to the word "may." In the absence of any such statement, we are hesitant to read a grant of discretion to the district courts where none had been permitted in the past.

Second, and more conclusive, is the fact that in amending the damages section, Congress recognized that the new penalty structure would be too severe for some violations of the Act and addressed that concern by creating an exception to the penalty structure for the interception of certain private satellite video communications. 18 U.S.C. § 2520(c)(1). This exception originated in concerns expressed by Senators Laxalt, Grassley, DeConcini and Simpson during subcommittee consideration "about the bill's penalty structure for the interception of certain satellite transmissions by home viewers," and it culminated in an amendment to the bill offered by Senator Grassley. S.Rep. No. 99–541, 99th Cong.2d Sess. 6–7, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555, 3560–61. The fact that Congress chose to address concerns about the severity of the new penalty structure by creating a specific exception for certain actions suggests that Congress intended to limit the types of violations for which the penalties could be avoided. This conflicts with and ultimately defeats an inference that Congress intended to grant district courts the discretion to decide the cases in which the more severe penalties should attach.[3]

---

**3.** Appellant Wood raises two additional issues relating to damages. First, he contends that the issue of appellees' actual damages was a disputed issue of material fact that should have precluded the grant of summary judgment. This argument is without merit. Under 18

### C. Failure to Reconsider

A court may relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect. Fed.R. Civ.P. 60(b)(1). A district court's decision to grant or deny relief from a judgment or order under Rule 60(b)(1) may be reversed only for an abuse of discretion. *Ellingsworth v. Chrysler*, 665 F.2d 180, 184 (7th Cir.1981). An attorney's negligent mistake, evincing a lack of due care, is not a proper ground for relief under Rule 60(b). *Western Transp. Co. v. E.I. Du Pont De Nemours*, 682 F.2d 1233, 1236 (7th Cir. 1982). The district court did not abuse its discretion in this case by failing to grant relief from its order granting appellees' motion for summary judgment on the ground that appellant's "attention was focused on his equitable defense of 'privilege'" so that he was "substantially distracted" from pursuing other defenses.

### III. ATTORNEYS' FEES

Appellees have requested an award of the costs and attorneys' fees incurred in defending against this appeal under both the damages section in the Omnibus Crime Control Act, 18 U.S.C. § 2520, and under Fed.R.App.P. 38.

Appellees cite no case, and we are unaware of any, awarding appellate fees under 18 U.S.C. § 2520, which states that "appropriate relief" includes "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2520(b)(3). In support of their position, appellees cite cases that interpret "costs" under Fed.R.App.P. 39 as including attorneys' fees under the Civil Rights Attorneys' Fees Awards Act. These cases do not support a similar interpretation for at-torney's fees under the Omnibus Crime Control Act. *See Oates v. Oates*, 866 F.2d 203 (6th Cir.1989) (language of § 2520 does not justify deviation from the "American Rule" that each party bears its own attorneys' fees for purposes of interpreting the word "costs" in Fed.R.Civ.P. 68). Appellees' request for attorneys' fees for this appeal will be denied.

In the alterative, appellees request attorneys' fees under Fed.R.App.P. 38, which permits a court of appeals to award "just damages and single or double costs to the appellee" if it finds that an appeal is frivolous. Determining whether to apply Rule 38 sanctions is a two-step process. The first step is determining whether the appeal is frivolous, that is, whether the result is obvious or the appellant's argument is wholly without merit; the second is determining whether the case is appropriate for sanctions, that is, whether there is some evidence of bad faith. *Williams v. U.S. Postal Service*, 873 F.2d 1069, 1075 (7th Cir.1989).

We conclude that this appeal was neither frivolous nor taken in bad faith. Although some of appellant's arguments are clearly meritless, we cannot say that his appeal as a whole is without merit. His arguments for application of the common law privilege attaching to statements made to law enforcement agents and his reading of the damages section of the Omnibus Crime Control Act are good faith arguments for an extension of the law and they carry a certain moral force. Appellant is righteously, and perhaps rightfully, indignant that the law requires him to pay $20,000 to persons whose illegal activity he attempted to bring to light. Although we do not adopt his proposed interpretations of the law, we cannot find either that they are

---

U.S.C. § 2520, appellees were entitled to the greater of statutory damages or actual damages. Therefore, they were entitled to statutory damages unless their actual damages were greater than $20,000. The district court found that appellees had waived their right to prove actual damages when they stated their willingness to accept the statutory liquidated damages. This eliminated any factual dispute regarding appellees' actual damages.

Second, appellant argues that because the telephone conversation with Allan May was taped in 1985, prior to the effective date of the amendment to the damages section in 18 U.S.C. § 2520, his violation should be subject to the earlier statutory damage formula of $100 per day or $1,000 per violation. This argument is also meritless. Appellant committed the violations that are the subject of this suit when he *disclosed* the tapes in 1987, not when the tapes were made by LeVine.

**450**

so outrageous as to be frivolous, or that they were brought in bad faith.

The decision of the district court is AF-FIRMED.

Appellees' request for attorneys' fees on appeal is DENIED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting in part.

The majority opinion fully and fairly presents the issues in this case, but I must respectfully dissent on the interpretation of the damage statute. It is a close question, but I do not believe Congress could have intended to leave no leeway for a district judge to exercise some discretion in the great variety of circumstances that could easily arise. The facts in this case are an example of the unfairness that can result from a rigid application of the statute no matter the extenuating circumstances. I would allow plaintiffs, at most, no more than nominal damages.