David S. REYNOLDS, Annette Reynolds, Dale Anderson, Luke Anderson, James Fisher, Janice Beadle, Tammy May, Harold Quarles, Carl Hodge, Edna Davis, and Lynn Brown, Plaintiffs, Pamela Whelan, individually and as next friend of Quentin Lucas and Carlton Lucas, Minors, Quentin Lucas, a minor nfr Pamela Whelan, Carlton Lucas, a minor nfr Pamela Whelan, Melissa Ann Smith, George Edward Callison, John Clayton Cooper, Dianne Cooper, Deana Taylor nfr J.H. Taylor, J.H. Taylor, Rachel Fisher, and Rose Anderson, Intervenors–Plaintiffs

v.

Newell SPEARS and Juanita Spears, individually and d/b/a White Oak Package Store, Defendants.

No. 92–CV–1016.

United States District Court, W.D. Arkansas, El Dorado Division.

July 22, 1994.

Don G. Gillaspie, El Dorado, AR, for plaintiffs and all intervenors-plaintiffs except Pamela Whelan, individually and as next friend of Quentin Lucas and Carlton Lucas, minors.

David F. Guthrie, and James V. Spencer, III, El Dorado, AR, for Quentin Lucas and Carlton Lucas.

Allen P. Roberts, Roberts, Harrell & Lindsey, P.A., Camden, AR, for defendants.

## MEMORANDUM OPINION

HENLEY, Senior Circuit Judge.*

This action was filed January 27, 1992, pursuant to 18 U.S.C. § 2520, which provides for the recovery of civil damages for violations of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. §§ 2510–2520 (1991). Now before the court is the plaintiffs' motion for summary judgment.[1]

### I. Background

This litigation results from the same factual background as was involved in *Deal v. Spears*, 780 F.Supp. 618 (W.D.Ark.1991), *aff'd*, 980 F.2d 1153 (8th Cir.1992), and the opinions of both the District Court and the Eighth Circuit in that case provide a comprehensive review of the facts. This court will only reiterate those necessary for resolution of plaintiffs' summary judgment motion.

In April 1990 the White Oaks Package Store (liquor store), owned by the defendants Newell Spears (Newell) and Juanita Spears (Juanita), was broken into, and about $16,-000.00 was stolen. Believing one of his employees might have been involved, Newell placed a recording device on the telephone extension so that he could monitor all calls made to and from the store phone. The extension to which the recorder was attached was located in the Spears' residence, which was adjacent to the liquor store. The recorder operated intermittently from June 27 until August 13, 1990. Many of the recorded conversations involved employee Sibbie Deal (now Sibbie Lucas) and Calvin Lucas, who upon discovering what the Spears had done, filed suit. That litigation was eventually resolved against the Spears. The present action involves others who had personal conversations over the liquor store's telephone line during the period that the recorder was attached to the extension.

### II. Discussion

Because plaintiffs seek summary judgment, the court must view the evidence in the light most favorable to defendants. *Harvey v. Shalala*, 19 F.3d 1252, 1253 (8th Cir.1994). Plaintiffs' motion may be granted only if there is no genuine issue of material fact and plaintiffs are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Title 18 U.S.C. § 2511(1)(a) makes it unlawful for any person to "intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." If a violation occurs, the persons whose communications were illegally monitored may seek appropriate relief in a civil action. 18 U.S.C. § 2520(a). "Appropriate relief" includes equitable and declaratory relief, statutory and punitive damages,

---

* J. Smith Henley, United States Senior Circuit Judge, Eighth Circuit, sitting by designation.

1. On June 23, 1993, Melissa Ann Smith, George Edward Callison, John Clayton Cooper (by Dianne Cooper, mother and next friend), and Deana Taylor (by J.H. Taylor, mother and next friend) filed a petition to intervene. Through inadvertence of both court and counsel, this motion was not ruled upon either before or during the May 5, 1994 hearing concerning plaintiffs' motion for summary judgment. It appearing that the interests of justice require intervention, a separate nunc pro tunc order has been issued, allowing intervention as of May 5, 1994.

and attorney's fees and costs. 18 U.S.C. § 2520(b). The relevant provision delineating damages provides that the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or—

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2). In this case, it is undisputed that plaintiffs suffered no actual damages and defendants made no profits. Moreover, the recorder was operational for less than two months. Consequently, each plaintiff seeks statutory damages of $10,-000.00, as well as attorney's fees and costs.

To correctly determine whether each plaintiff is entitled to summary judgment, it is necessary to separate the claimants into two general groups.

### A. Plaintiffs Not on Tape

The evidence before the court includes fifteen audio tapes used to record conversations on the liquor store's telephone line. These tapes, the only ones found at the Spears' residence, were confiscated by the United States Marshal in September 1990. Both sides agree that the tapes do not contain any recordings of the following eight plaintiffs: Luke Anderson, Janice Beadle, Carl Hodge, Edna Davis, Bessie Phillips, Melissa Ann Smith, George Edward Callison and John Clayton Cooper.

Because these parties are not on the tapes now before the court, there is no conclusive evidence that their conversations were in fact recorded.[2] Though it is undisputed that all plaintiffs participated in conversations over the liquor store's telephone line, the evidence also shows that at times the recorder was not operating, either because it had been turned off or had run out of tape. These periods of down time apparently lasted as long as two or three days, although it is unclear exactly how frequent they were. Nevertheless, plaintiffs note that portions of the tapes were erased and/or recorded over. They therefore contend that additional conversations were recorded and that in all probability each of the plaintiffs participated in a recorded conversation.

With virtually no evidence as to how often the recorder was actually operating, such a conclusion would require pure speculation. This is inadequate to satisfy the plaintiffs' burden of proving that their conversations were in fact recorded, particularly in light of the deference which must be given to defendants' version of the facts. The motion for summary judgment therefore is to be denied as to all but one of the plaintiffs whose voices have not been identified as being on the tapes now in evidence.

As to Luke Anderson, uncontroverted evidence indicates Juanita revealed information to Sibbie Deal which she only could have learned had she heard a telephone conversation between Anderson and Deal. Anderson has therefore presented sufficient evidence that his conversation was in fact recorded. He will be considered along with the plaintiffs who are identified as being on the tape.

### B. Plaintiffs On the Tapes

As to the remaining plaintiffs, it is undisputed that their conversations were recorded. It is also undisputed that Newell Spears was primarily responsible for the taping. Consequently, his violation of 18 U.S.C. § 2511(1)(a) is clear. However, defendants do not concede that Juanita Spears is liable. Moreover, they argue that five of the plaintiffs are barred by the two-year statute of limitations, that the court has discretion to award no statutory damages, and that the court should exercise that discretion and deny plaintiffs any damages, fees, or costs. We consider each of these contentions in turn.

#### 1. Juanita's Liability

Juanita was found liable in the *Deal* case because she disclosed to third parties the contents of a recorded conversation involving Sibbie Deal. *Deal*, 780 F.Supp. at 624. Such disclosure is an independent violation of the statute. 18 U.S.C. § 2511(1)(c). However, the *Deal* courts did not determine whether

---

**2.** This statement does not apply to Luke Anderson, hereinafter to be discussed.

Juanita was sufficiently involved in the actual recording to be held liable under § 2511(1)(a). In this case, because the parties agree Juanita did not disclose the contents of any of the current plaintiffs' conversations, this court must determine whether she is responsible under subsection (a) for intercepting the plaintiffs' communications.

Defendants contend Juanita was not responsible for intercepting calls because she never actively participated in the taping, she was never consulted about the decision to use the recorder, and she was not involved in the purchase or installation of the device. According to defendants, Juanita's only involvement was being present in the home when Newell replayed some of the tapes. Plaintiffs respond that both Newell and Juanita's affidavits are inconsistent with testimony they gave in the previous litigation. In particular, they claim Juanita agreed beforehand to the taping and listened to many of the tapes, thus intercepting calls, for hours at a time.[3]

Viewing the evidence in the light most favorable to defendants, the court concludes that Juanita was not actively involved in either the decision to tape the telephone conversations or the actual taping.[4] She did, however, overhear portions of some of the tapes, though the number and contents of the tapes she heard are unknown.

■ The first issue to consider is whether the mere act of listening, apart from the actual recording, is an "interception" prohibited by § 2511(1)(a).[5] That term is defined in § 2510(4) as follows: " 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

The law is established that the taping of a telephone conversation is an "interception." However, courts have found that the act of listening to a taped conversation is not, in and of itself, an "interception." *See United States v. Turk*, 526 F.2d 654, 658 (5th Cir.) ("The argument that a new and different 'aural acquisition' occurs each time a recording of an oral communication is replayed is unpersuasive."), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976); *cf. United States v. Nelson*, 837 F.2d 1519, 1527 (11th Cir.) ("Term 'intercept' as it relates to 'aural acquisition' refers to the place where a communication is initially obtained regardless of where the communication is ultimately heard."), *cert. denied*, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988); *Amati v. City of Woodstock*, 829 F.Supp. 998, 1008 (N.D.Ill. 1993) ("Whether the communication is heard by the human ear is irrelevant" to determination of whether communication was intercepted.). This interpretation of § 2510(4) is persuasive. Consequently, Juanita is not liable for intercepting the conversations at issue merely because she overheard the tapes.

Even if Juanita could be held liable for listening to the tapes, no plaintiff, with the possible exception of Luke Anderson, would be entitled to summary judgment, for there is no evidence that Juanita listened to the conversations of any other party to this suit.[6]

---

**3.** The *Deal* courts made no factual findings regarding Juanita's involvement in either the decision to buy and install the recorder or the actual taping.

**4.** The plaintiffs' allegation that Juanita's affidavit blatantly contradicts her testimony in the prior litigation is something of an overstatement. For the most part, both she and Newell maintained throughout the prior litigation that Newell was solely responsible for the installation and taping of the calls. Though she did admit at one point that she possibly discussed the issue with Newell beforehand, the testimony does not indicate Juanita actually participated in the decision to buy the recorder. In any event, any discrepancy must be resolved in favor of defendants.

**5.** Section 2511(1)(d) prohibits the "use" of another's wire, oral, or electronic communication. However, the caselaw suggests that the term "use" requires something other than the mere act of listening. *See, e.g., Bess v. Bess*, 929 F.2d 1332 (8th Cir.1991) (defendant orally disclosed contents of intercepted conversation in divorce proceedings); *Fultz v. Gilliam*, 942 F.2d 396 (6th Cir.1991) (defendant played tape for third party); *United States v. Antoon*, 933 F.2d 200 (3d Cir.) (prosecution sought to admit recorded conversation in criminal prosecution), *cert. denied*, —— U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991). The court finds Juanita did not "use" the plaintiffs' conversations by overhearing the tapes.

**6.** Because this court holds in the alternative that listening to a recorded communication is not, in

In fact, because the evidence suggests the Spears were concerned primarily with monitoring conversations between Sibbie Deal and Calvin Lucas, the most logical inference is that Juanita listened only to those conversations. Of course, she may have heard others, but she only listened occasionally, and there is no evidence as to how often she was present when Newell played the tapes. This court is unable to infer that she heard conversations of any plaintiff in this suit.

### 2. Statute of Limitations

■ 18 U.S.C. § 2520(e) explicitly provides a two year statute of limitations running from the time the "claimant first has a reasonable opportunity to discover the violation." On the basis of this statute, defendants argue that the claims of Pam Whelan, Quentin Lucas, Carlton Lucas,[7] Rose Anderson and Rachel Fisher should be dismissed as untimely. The relevant chronology is as follows: the taping stopped on August 13, 1990; the *Deal* litigation was commenced on August 29, 1990; Whelan, Quentin Lucas, and Carlton Lucas moved to intervene on May 5, 1993; Rachel Fisher and Rose Anderson moved to intervene on November 8, 1993. Defendants claim the five plaintiffs had reasonable opportunities to discover the defendants' violations more than two years prior to their intervention. Plaintiffs counter that no party had a reasonable opportunity to discover his or her presence on the tapes until April 1993, when the court-ordered examination of the tapes was completed. The question for this court to decide is when the statute of limitations began to run (*i.e.* when the plaintiffs had a reasonable opportunity to discover the violations).

Two factors are relevant. First, each of the five plaintiffs now at issue are, or were, closely related to either Sibbie Lucas or Calvin Lucas. In particular, Rose Anderson is the sister-in-law of Sibbie Lucas, Rachel Fisher is Sibbie Lucas' niece, Quentin and Carlton Lucas are the sons of Calvin Lucas, and Pam Whelan was married to Calvin Lucas when the tapes were discovered. Based on these close relationships, it is reasonable to infer that the five challenged plaintiffs knew, or should have known, as soon as the *Deal* litigation was commenced that the Spears had taped conversations involving Sibbie Deal and Calvin Lucas. They therefore were on notice as of that date that the Spears had been taping some calls. Furthermore, because they knew, or should have known, that they had engaged in telephone conversations over the liquor store's line during the relevant time period, it is fair to infer notice of the possibility that their own conversations had been recorded.

Second, the district court in *Deal* found that the United States Marshal seized the tapes now in evidence on September 3, 1990. From that date forward the tapes were in the court's possession and were accessible to the plaintiffs in the prior litigation. Based on this fact, along with the close relationships involved, the court concludes that the plaintiffs could have discovered, through either Sibbie Deal or Calvin Lucas, whether their voices were on the tapes. Even if this course of action was unavailable, the plaintiffs could have retained attorneys and sought to intervene in the prior litigation based on a reasonable suspicion that they were on the tapes. At the very least, those attorneys could have requested the court's permission to review the tapes in order to determine whose conversations had been recorded.

The court concludes that as soon as the tapes were seized in September 1990, all parties closely related to either Sibbie Deal or Calvin Lucas had a reasonable opportunity to discover that their telephone conversations had been recorded. Because the five plaintiffs here at issue did not seek intervention until May 1993 and November 1993, the two-year statute of limitations had expired.[8]

---

and of itself, an "interception" of that communication, it need not address the question whether Luke Anderson would in fact be entitled to summary judgment against Juanita.

7. Some documents in the file refer to Carston Lucas rather than Carlton Lucas. The two names refer to the same person.

8. Though three of the five plaintiffs now under discussion (Rachel Fisher, Quentin Lucas, Carston Lucas) are minors, no argument has been made concerning tolling. The court nevertheless notes that there is no possibility for minority tolling in this case. In *Victor Foods, Inc. v. Crossroads Economic Dev., Inc.*, 977 F.2d 1224, 1227 (8th Cir.1992), the court stated that "state

Those plaintiffs therefore are not entitled to summary judgment.

At this point in the analysis, defendants have exhausted all viable defenses against liability. Therefore, there being no genuine dispute that the telephone conversations of the remaining plaintiffs were intentionally intercepted by Newell, the court will grant summary judgment in favor of those plaintiffs and against Newell Spears.

### 3. Damages

■ 18 U.S.C. § 2520(c)(2) states that "the court *may* assess ... statutory damages of ... $10,000." The term "may" was inserted by amendment in 1986. Before that amendment, the statute provided that the district court "shall" award at least minimum statutory damages. At issue is whether an award of $10,000.00 per plaintiff is mandatory, as argued by plaintiffs, or discretionary, as urged by defendants.

There is no Eighth Circuit precedent on the issue, but each side has found an opinion supporting its position. The case supporting plaintiffs is *Rodgers v. Wood,* 910 F.2d 444 (7th Cir.1990), where a divided panel of the Seventh Circuit held the district court had no discretion despite the use of the term "may" in the statute. Though the panel majority recognized that "[t]he legislative history of 18 U.S.C. § 2520(c)(2) could support an inference that Congress intended to permit district courts the discretion to impose no damages," *Rodgers,* 910 F.2d at 448, the court declined to draw that inference. Two reasons were provided.

First, there is nothing in the legislative record explaining why Congress made the change from the word "shall" to the word "may." In the absence of any such statement, we are hesitant to read a grant of discretion to the district courts where none had been permitted in the past.

Second, and more conclusive, is the fact that in amending the damages section, Congress recognized that the new penalty structure would be too severe for some violations of the Act and addressed that

tolling and savings provisions do not apply when Congress has provided a federal statute of limitations for a federal claim." Consequently, the court cannot look to Arkansas tolling principles.

concern by creating an exception to the penalty structure for the interception of certain private satellite video communications. 18 U.S.C. § 2520(c)(1).... The fact that Congress chose to address concerns about the severity of the new penalty structure by creating a specific exception for certain actions suggests that Congress intended to limit the types of violations for which the penalties could be avoided. This conflicts with and ultimately defeats an inference that Congress intended to grant district courts the discretion to decide the cases in which the more severe penalties should attach.

*Id.*

The Seventh Circuit's reasoning was rejected in *Shaver v. Shaver,* 799 F.Supp. 576 (E.D.N.C.1992), which involved a marital dispute in which the wife unlawfully recorded the husband's calls. Though the district court noted *Rodgers,* it reached the opposite conclusion, relying primarily on the plain meaning of the term "may." The court began by quoting general rules of interpretation:

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *US v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation omitted). "Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have different meaning." *Muscogee (Creek) Nation v. Hodel,* 851 F.2d 1439 (D.C.Cir. 1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989).

*Shaver,* 799 F.Supp. at 579. The court then found that the plain meaning of the term "may" did not produce a "result demonstrably at odds with intention of the drafters." *Id.* at 580. "To the contrary, the statute on its face suggests that Congress understood

Moreover, there is nothing in the federal statute or the relevant caselaw which provides tolling for minors.

the significance of using 'may' rather than 'shall.' This is because Congress used 'shall' in § 2520(c)(1) but used 'may' in § 2520(c)(2)." *Id.*

The court closed by rejecting the rationales enunciated in *Rodgers.* First, the lack of legislative history was irrelevant because "[a] statute's plain meaning is clear enough that it should not have to be restated or explained in legislative history." *Id.* The court also found Congress' limitation of damages in cases involving satellite communications to be irrelevant.

> Absent a statutory statement to the contrary, it is not reasonable to expect Congress to enumerate in the statute every possible situation in which a lesser amount of damages would be appropriate. Instead, Congress apparently addressed this issue by inserting the word "may" to give federal district courts the discretion to either award the damages described by § 2520(c)(2) or not to award any damages under § 2520(c)(2).

*Id.*[9]

The reasoning of the *Shaver* court is persuasive and correctly refutes the Seventh Circuit's analysis. Consequently, this court finds that it has discretion under § 2520(c)(2) to award either $10,000.00 damages or no damages.[10]

■ In exercising the discretion granted in § 2520(c)(2), the following factors are relevant: the plaintiffs suffered no actual damages; the privacy intrusion as to these plaintiffs appears to have been relatively minor as compared to the intrusion into the affairs of Sibbie and Calvin Lucas; the Spears have already paid approximately $60,000.00 for their unlawful acts; the Spears, who are now retired and in their seventies, have no source of income other than their accumulated wealth; and Newell Spears used the recorder solely for the purpose of discovering who robbed his business. Though the court notes that the Spears' accumulated wealth is substantial and would allow them to pay a significant judgment, this factor is outweighed by the others listed above, all of which counsel against an award of damages. Accordingly, pursuant to the plain language of § 2520(c)(2), the court awards no damages.

### 4. Attorney's Fees and Costs

■ For the same reasons, the court finds that attorney's fees and costs are not appropriate relief under 18 U.S.C. § 2520(a). In addition, the court notes that this litigation has been conducted by essentially the same counsel as were involved in the *Deal* litigation. Considering that the tapes, which are overwhelming evidence of liability, were made accessible very early in that litigation, it would have been relatively simple to join all of the current plaintiffs in the prior lawsuit. This court will not punish defendants with two sets of attorney's fees and costs when such piecemeal litigation as occurred here could have been easily avoided by diligent review of the evidence.

### III. Conclusion

This Memorandum Opinion includes the court's findings of fact and conclusions of law.

In summary, the motion for summary judgment against Juanita Spears will be denied as to all plaintiffs. The motion for summary judgment against Newell Spears will be denied as to Janice Beadle, Carl Hodge, Edna Davis, Bessie Phillips, Melissa

---

**9.** The court then noted that the language of the statute does not allow a court to award damages in an amount between $0 and $10,000. According to *Shaver*, it has to be all or nothing.

**10.** Plaintiffs cite *Bess v. Bess*, 929 F.2d 1332 (8th Cir.1991), but the court there did not reach this issue. One of the holdings in *Bess* was that it would be improper to apply the amended version of § 2520 to actions occurring before 1986. *Bess*, 929 F.2d at 1335. Hence, though the panel recognized that the 1986 amendments changed "shall" to "may," *id.* at 1334, it did not decide what effect, if any, this change had on the meaning of the statute. Nevertheless, plaintiffs contend the following language indicates the Eighth Circuit would hold in their favor: "We also deem it significant that, although Congress increased the *minimum* statutory damages under section 2520,...." *Id.* at 1335 (emphasis added). The reference to "minimum" damages is pure dictum and does not control here. Moreover, the Eighth Circuit's statement is not inconsistent with this court's holding, for $10,000.00 is the minimum *if* statutory damages are awarded.

Ann Smith, George Edward Callison, John Clayton Cooper, Pam Whelan, Quentin Lucas, Carlton Lucas, Rose Anderson and Rachel Fisher. The motion for summary judgment against Newell Spears will be granted as to the remaining plaintiffs. Those plaintiffs will be awarded no damages, attorney's fees, or costs.