_____

No. 95-2071

_____

David S. Reynolds,                   *
                                     *
      Plaintiff - Appellant,         *
                                     *
Annette Reynolds; Dale Anderson;*
Luke Anderson; James Fisher;         *
Janice Beadle; Tammy May;            *
Harold Quarles; Carl Hodge;          *
Edna Davis; Lynn Brown,              *
                                     *
      Plaintiffs - Appellants,       *
                                     *
Pamela Whelan, Individually and *
as next friend of Quentin Lucas *
and Carlton Lucas, Minors;           *
Quentin Lucas, a minor; Carlton *   Appeal from the United States
Lucas, a minor; next friend      *  District Court for the
Pamela Whelan; Melissa Ann           *  Western District of Arkansas.
Smith,                               *
                                     *
      Intervenor-Plaintiffs,         *
                                     *
George Edward Callison; John         *
Clayton Cooper, next friend          *
Dianne Cooper,                       *
                                     *
      Intervenor-Plaintiffs -        *
      Appellants,                    *
                                     *
Dianne Cooper,                       *
                                     *
      Intervenor-Plaintiff,          *
                                     *
Deana Taylor, next friend J. H. *
Taylor,                              *
                                     *
      Intervenor-Plaintiff -         *
      Appellant,                     *
                                     *
J. H. Taylor,                        *
                                     *
      Intervenor-Plaintiff,          *
                                     *
Rachel Fisher; Rose Anderson,        *
                                     *
      Intervenor-Plaintiffs -        *
      Appellants,                    *

```
                                   *
Michael Reeves; Helena Reeves;    *
Thomas Barkhimer; Froney Grace;   *
Bessie Phillips,                  *
                                   *
      Plaintiffs - Appellants,    *
                                   *
      v.                          *
                                   *
Juanita Spears, doing business    *
as White Oak Package Store,       *
Executrix of Estate of Newell     *
Spears; White Oak Package         *
Store,                            *
                                   *
      Defendants - Appellees.     *
```

_____

Submitted:  May 15, 1996

Filed:  August 21, 1996

_____

Before BOWMAN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The plaintiffs in this action appeal from the orders of the District Court[1] granting judgment against some of the plaintiffs, and declining to award damages, attorney fees, and costs to another group of plaintiffs in whose favor summary judgment was granted, all the denouement of a civil action based on Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521 (1988 & Supp. II 1990) (the Act), seeking damages for the illegal interception of telephone conversations.  We affirm.

_____

[1]The Honorable J. Smith Henley, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation in the District Court for the Western District of Arkansas.

-2-

This is the second lawsuit arising from the facts set forth in Deal v. Spears, 780 F. Supp. 618 (W.D. Ark. 1991), aff'd, 980 F.2d 1153 (8th Cir. 1992), facts that we recount briefly here. In 1990, Newell and Juanita Spears owned and operated a package liquor store near Camden, Arkansas, the White Oak Package Store, and lived in a mobile home adjacent to the store.[2] Newell Spears, in an attempt to get information about an April 1990 burglary at the store, which he believed to be an inside job, purchased and installed a recording device on the telephone in his residence, which shared a telephone line with the store telephone. The device recorded conversations made from or received on either the residential or the business telephone when either handset was picked up, with no indication to either party that the conversation was being recorded. Calls were taped, if the machine was on and a blank tape was in the machine, from June 27 through August 13, 1990. The tapes of the telephone conversations were seized by a United States deputy marshal on September 3, 1990.

In Deal v. Spears, Sibbie Deal, a White Oak employee, and Calvin Lucas, Deal's extramarital lover, recovered $10,000 each from Juanita and Newell Spears individually, a total of $40,000, as well as their attorney fees, in a civil suit for the illegal interception (by Newell) and disclosure (by Juanita) of telephone conversations between Deal and Lucas, recorded while Deal was at work in the store.[3] In January 1992, after Deal and Lucas won

---

[2]Newell Spears died in January 1995 and his widow Juanita, as executrix of his estate, was substituted as defendant. She is also a defendant individually.

[3]Sibbie Deal and Calvin Lucas are divorced from the persons to whom they were married at the time their telephone conversations were recorded, and married each other after their suit was filed. As we did in Deal v. Spears, 980 F.2d 1153 (8th Cir. 1992), to avoid any confusion we will refer to Sibbie Lucas as Sibbie Deal.

their judgment in the district court, the plaintiffs here brought this action, contending that their conversations also were intercepted during the relevant period, and they sought $10,000 each from both Juanita and Newell Spears.[4] Under federal law, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a) (1988). For interception by telephone, apart from equitable or declaratory relief, "the court may assess as damages whichever is the greater of" actual damages and profits or "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000," id. § 2520(c)(2) (1988); "punitive damages in appropriate cases," id. at § 2520(b)(2) (1988); and attorney fees, id. § 2520(b)(3) (1988).

The plaintiffs sought summary judgment. As we explain the District Court's judgment on that motion, we will sort out how the court ruled on the claim of each of the plaintiffs who is an appellant here. (As noted in the case caption, a handful of the original plaintiffs and those who sought to intervene did not appeal.)

II.

The District Court's rulings are set forth in a published opinion, Reynolds v. Spears, 857 F. Supp. 1341 (W.D. Ark. 1994), and in an unpublished supplemental opinion issued on March 29, 1995.

---

[4]Intervenors Smith, Callison, Cooper by Cooper, and Taylor by Taylor were joined as plaintiffs with an effective date of May 5, 1994, by the District Court's numc pro tunc order of July 21, 1994. Reynolds v. Spears, 857 F. Supp. 1341, 1343 n.1 (W.D. Ark. 1994).

The court noted that there were no recordings of telephone conversations of the following plaintiffs: Janice Beadle, Carl Hodge, Edna Davis, George Edward Callison, John Clayton Cooper, and Bessie Phillips. The court concluded that these plaintiffs were unable to prove their claims, so summary judgment was denied them, and judgment was entered for Juanita Spears both individually and as executrix of Newell's estate.

Luke Anderson also was unrecorded, but there was uncontroverted evidence that Juanita Spears disclosed the contents of a conversation between Anderson and Sibbie Deal. Thus, it was apparent to the court that at least one of Anderson's conversations had been intercepted, so he is one of the plaintiffs for whom the court granted summary judgment.

Of the remaining plaintiffs, all of whom apparently had conversations recorded,[5] the claims of Rose Anderson, Sibbie Deal's sister-in-law, and Rachel Fisher, Deal's niece, both of whom moved to intervene on November 8, 1993, were held barred by the statute of limitations, as Anderson and Fisher had "a reasonable opportunity to discover the violation" more than two years before they sought to intervene. 18 U.S.C. § 2520(e) (1988).[6] Summary judgment was denied to Anderson and Fisher, and judgment was entered against them in favor of Juanita Spears, individually and in her capacity as executrix.

---

[5]In their brief on appeal, plaintiffs mention Rose Anderson and Rachel Fisher in the group of non-intercepted claimants. Brief of Appellants at 28. The District Court included them as intercepted parties. Given our holding concerning the statute of limitations, the result is the same as to Anderson and Fisher regardless of whether or not their telephone conversations were intercepted.

[6]Pamela Whelan, who was Calvin Lucas's wife at the time of the taping, and Quentin and Carlton Lucas, Calvin Lucas's sons, moved to intervene on May 5, 1993. Their claims also were held time-barred. They do not appeal.

"[D]efendants hav[ing] exhausted all viable defenses against liability," the District Court granted summary judgment against Juanita Spears, as executrix of Newell's estate, in favor of all the intercepted plaintiffs who were not time-barred. Reynolds, 857 F. Supp. at 1347. The court concluded, however, that it had discretion to decline to award statutory damages (no actual damages were sought) and denied such relief. The court also denied a plaintiffs' motion for attorney fees and costs. Further, the court denied the plaintiffs' motion for summary judgment against Juanita Spears individually and entered judgment for her in her individual capacity.

Plaintiffs now contend that the court erred in holding that the non-recorded of their number failed to prove their claims and that the claims of Rose Anderson and Rachel Fisher were time-barred. They further argue that the court erred in concluding that Juanita Spears individually was not liable for the interceptions. Plaintiffs also contend that the court had no discretion to decline an award of statutory damages and in any event erred when it refused to award such damages under the facts here. Finally, they challenge the court's failure to award attorney fees and costs.

III.

A.

The District Court concluded that some of the plaintiffs made an insufficient showing that their calls were intercepted. By stipulation, the parties agreed that these plaintiffs were not among those whose voices were recorded on the tapes seized from the Spearses. These plaintiffs nevertheless speculate that their conversations were erased or recorded over, and argue that this theory, together with their undisputed claims of having spoken to Sibbie Deal while she was at work and during the relevant period, are sufficient to prove interception. We disagree.

-6-

It is uncontroverted that there were times between June 27 and August 13, 1990, when telephone conversations to or from the store were not recorded, although those days and times, and the number and length of those conversations, are unknown. Plaintiffs nevertheless would have us presume that all conversations were recorded, absent evidence to the contrary. We decline to do so, as such a presumption would improperly shift the burden of proof to the defendants. We conclude that as a matter of law the sparse evidence offered by those plaintiffs falls far short of creating a submissible case on their claims of interception.

The District Court properly denied summary judgment to this group.

B.

Rose Anderson and Rachel Fisher argue that the District Court erred in holding their claims barred by the statute of limitations.

Under 18 U.S.C. § 2520(e), "[a] civil action . . . may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." Anderson is Sibbie Deal's sister-in-law and Fisher is Deal's niece. Dale Anderson, Rose Anderson's husband, filed a timely claim, as did James Fisher, Rachel's father. Deal brought suit in August 1990, two weeks after the taping stopped, and the tapes were seized September 3, 1990. Anderson and Fisher did not move to intervene in the Reynolds suit until November 8, 1993, more than three years later.

We hold that the close relationships of Anderson and Fisher to Deal gave them more than "a reasonable opportunity to discover" any violation of their rights within two years of August 29, 1990, when Deal and Lucas filed suit, and certainly no later than two years after September 3, 1990, when the tapes were seized and the

intercepted voices could have been identified.  Anderson and Fisher
moved to intervene more than a year after their claims were time-
barred.  We hold that judgment for Juanita Spears on the claims of
Anderson and Fisher was proper.

IV.

We now proceed to the arguments of the intercepted plaintiffs,
in whose favor judgment was granted against Juanita Spears in her
capacity as executrix of Newell Spears's estate, but denied in her
individual capacity.

A.

The intercepted plaintiffs argue that the District Court erred
in concluding that only Newell Spears and not Juanita had
intercepted their telephone calls.  The facts relating to this
issue are undisputed.  Juanita knew that Newell planned to record
personal telephone conversations made or received by their
employees at work, and that he hoped both to learn something about
the burglary of the store and to effect some monitoring of
employees' personal use of the store telephone.  It is undisputed
that Juanita overheard some of the tapes, but that she did not
listen to all of them.  It is also undisputed that she was not
present when the recording device was purchased or installed, and
that she did not know how to operate it.

"`[I]ntercept' means the aural or other acquisition of the
contents of any wire, electronic, or oral communication **through the
use of any electronic, mechanical, or other device**."  18 U.S.C.
§ 2510(4) (1988) (emphasis added).  We conclude that, on these
facts, Juanita's listening to telephone conversations that Newell
had unlawfully recorded are not interceptions for which she may be
held liable.  She used no "electronic, mechanical, or other device"

-8-

to acquire the telephone conversations, the acquisitions having been accomplished when Newell set the recording device and activated it. The listening to which Juanita admits is not an interception within the meaning of the statute. See United States v. Turk, 526 F.2d 654, 659 (5th Cir.) ("we conclude that no new and distinct interception occurs when the contents of a communication are revealed through the replaying of a previous recording"), cert. denied, 429 U.S. 823 (1976); cf. United States v. Nelson, 837 F.2d 1519, 1527 (11th Cir.) ("the term `intercept' as it relates to `aural acquisitions' refers to the place where a communication is initially obtained regardless of where the communication is ultimately heard"), cert. denied, 488 U.S. 829 (1988). The logical extension of a contrary holding--and the irrational and unfair result--would be that Newell could be found liable to each intercepted plaintiff two times or more, once for recording the conversations and again for each time he listened to the recordings.

We further hold that the evidence of Juanita's involvement in the actual interceptions, that is, in Newell's recording of the conversations, is insufficient for liability to attach to Juanita. Juanita's acquiescence in Newell's plans to tap his own telephone and her passive knowledge of her husband's interceptions are insufficient as a matter of law to impute liability to her for those interceptions in addition to Newell's liability, and would result in a potential double recovery for what is in reality a single interception.[7]

In point of fact, the above discussion may be dictum, because plaintiffs do not even argue on appeal that Juanita is liable for the interceptions because she heard some of the taped conversations

---

[7]In Deal v. Spears, Juanita Spears was found individually liable, not for interceptions, but for the disclosure of Newell's interceptions. Only Newell Spears was found liable for interception.

or because she was herself an interceptor, and thus they have abandoned those arguments.  See Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985).  The **only** arguments on the issue of Juanita's individual liability that plaintiffs have raised in their brief are (1) that Juanita is liable as fifty percent owner of the store whose business Newell was attempting to protect with the interceptions, and (2) that she is civilly liable as an aider and abettor just as she would be criminally liable.  We do not address these arguments as they are raised for the first time on appeal.  See Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 734 (8th Cir. 1993).  We have considered the unchallenged rationale of the District Court's conclusions on this issue only out of an abundance of caution.

Judgment in favor of Juanita Spears individually on the claims of all the plaintiffs is affirmed.

### B.

The intercepted plaintiffs urge us to find that the District Court erred in concluding that it had discretion in the award of statutory damages.  This issue of law is a question of first impression in this Circuit.

The statutory provision concerning the award of damages in a case such as this one reads as follows:

> [T]he court **may** assess as damages whichever is the greater of --
> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. §  2520(c)(2) (emphasis added).

-10-

Two of our sister circuits have considered the question now before us, reaching different results. The Seventh Circuit thought the word "may" in the statute is ambiguous, and that "[i]t is unclear whether it is intended to grant district courts the discretion to withhold an award of damages in cases in which a violation is found but damages would be inappropriate." Rodgers v. Wood, 910 F.2d 444, 448 (7th Cir. 1990). The court concluded that the statute afforded the district courts no such discretion, relying primarily on its interpretation of Title I of the Electronic Communications Privacy Act of 1986, Pub. L. 99-508, sec. 103, 100 Stat. 1848, 1853-54, which amended 18 U.S.C. § 2520. Prior to the 1986 amendments, § 2520 provided that "[a]ny person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter **shall** . . . be entitled to recover . . . actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher." 18 U.S.C. § 2520(2)(a) (1982) (emphasis added).

Despite the obvious change in language wrought by the amendments, the Rodgers v. Wood court concluded that, because the legislative history was silent regarding the reason for the language change, it would not "infer" that Congress intended to make the award of statutory damages discretionary. Further, while noting the ten-fold increase in the minimum statutory damages that also resulted from the amendments, the court decided that "Congress chose to address concerns about the severity of the new penalty structure by creating a specific exception" from the harsher penalties when the violation is the interception of certain private satellite or radio communications. This suggests, in the Seventh Circuit's view, "that Congress intended to limit the types of violations for which the penalties could be avoided." Rodgers v. Wood, 910 F.2d at 448.

-11-

More recently, the Fourth Circuit held that the language change "from the mandatory to the permissive verb form indicates that Congress intended to confer upon district courts the discretion to decline to award damages in applying § 2520(c)(2)." Nalley v. Nalley, 53 F.3d 649, 652 (4th Cir. 1995). We find the rationale of the Nalley court more persuasive than that set forth in Rodgers v. Wood, and now hold that the award of statutory damages under § 2520(c)(2) is discretionary with the district court. As in Nalley, the focus of our analysis is the meaning to be imputed to a single word, and the significance of the legislative amendment whereby that word became a part of the statutory scheme.

Initially, we note that the change in language from the mandatory to the permissive is clear. Knowing that "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect," Stone v. I.N.S., 115 S. Ct. 1537, 1545 (1995), we ordinarily could end the inquiry here. But the Supreme Court teaches us that the particular verb form here is not always as it seems. "The word `may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." United States v. Rodgers, 461 U.S. 677, 706 (1983) (footnote and citations omitted). Thus in some unusual circumstances we might be persuaded to impute a compulsory aspect to an ordinarily permissive verb form. We begin with the argument concerning the legislative history of the 1986 amendments, or in this case the lack thereof.

Here we have no legislative history on the language change, except that the Senate Report in describing the legislation parrots the language of the amended section. See S. Rep. No. 541, 99th Cong., 2d Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 3555,

-12-

3581.  From that silence we are asked to infer that no change was intended.  Reluctant as we are to rely on legislative history when it is in conflict with the plain meaning of the statutory language, our hesitation to draw inferences is not assuaged when there is no history at all.  See Northern States Power Co. v. United States, 73 F.3d 764, 766 (8th Cir. 1996) ("We think that when, as here, the statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative."), petition for cert. filed, 65 U.S.L.W. 3034 (July 5, 1996) (No. 96-29).  Plaintiffs contend that Congress would not have made so "great a change in the Act" without discussing it in reported legislative history.  Brief of Appellants at 17.  We find that contention unpersuasive.  Congress also increased the permissible statutory damages from $1000 to $10,000, and we see nothing in the legislative history that explains the reason for the ten-fold increase.  Yet no one suggests that, because there is no legislative history about the change, the $10,000 is, for example, a typographical error.  Because on its face "the language is unambiguous, silence in the legislative history cannot be controlling."  Dewsnup v. Timm, 502 U.S. 410, 419-20 (1992).

We look then for "obvious inferences from the structure and purpose of the statute" that "may" was intended to have something other than its ordinary meaning.  Rodgers, 461 U.S. at 706.  We find just the opposite.  In making the inquiry we conclude there are rational explanations for the change in language and there is no internal conflict if "may" is given its ordinary meaning and presumed to be a permissive verb form.  Considering the word in the context of the entire subsection of which it is a part, we conclude it must be given its ordinary meaning.

Before the 1986 amendments, the maximum statutory (civil) damages that were required to be awarded upon a finding of violation under the Act (if actual damages were not awarded) was

-13-

the greater of $1000 or $100 per day for each day of violation.  In 1986, such damages were increased to the greater of $10,000 or $100 per day of violation, a potential ten-fold increase.  We think it logical that Congress chose to make the award of such damages discretionary, given the potential of the law to bring financial ruin to persons of modest means, even in cases of trivial transgressions.  Unlike the court in Rodgers v. Wood, we do not think that Congress solved the potential problem that damages easily could be disproportionate to injury and culpability simply by creating a sole exception, not applicable here, prescribing less severe penalties for the interception of certain satellite or radio communications.

The 1986 amendments added the exception, or alternate method, for calculating damages where "the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted" on certain frequencies "and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain."  18 U.S.C. § 2520(c)(1) (1988).  In such cases, "the court **shall** assess" damages as set forth in the statute, mandatory language that appears three times in the subsection where the penalties are delineated.  From this portion of the amendments, we can see that Congress was quite adept at enacting a mandatory award of damages for § 2520 liability when it so chose.  It did so--without question--for specific violations within § 2520.  In order "[t]o give this contrasting language meaning," Nalley, 53 F.3d at 651, we conclude that it did not do so for the remaining violations.

Significantly, under the exception, the statutory damages to be awarded shall be "not less than $50 and not more than $500," id. § 2520(c)(1)(A), or "not less than $100 and not more than $1000"

for the second violation, id., § 2520(c)(1)(B).  The maximum financial "hit" from the mandatory penalty in § 2520(c)(1)--$500 or $1000--thus is considerably less than the minimum amount specified--$10,000--in § 2520(c)(2).  Just as the severity of the penalties is markedly different, so it follows that the discretion to be exercised by the courts in imposing such penalties would be different.  Under § 2520(c)(1), the court is required to impose some damages for violations in a modest amount that must come within a narrow range.  Under § 2520(c)(2), with a larger potential penalty, we believe that Congress gave the court much broader discretion, to award damages as authorized by the statute, or to award no damages at all.

In sum, then, we have the "crucial fact" that Congress changed the verb from "shall" to "may" in amending the statute in 1986.  Rodgers, 461 U.S. at 706 (discussing change in statutory language from "shall" to "may").  As we have explained, we will not infer that the change was inadvertent merely because the legislative history is silent.  Moreover, we see no reason, and none has been pointed out to us, why "literal application of [the] statute will produce a result demonstrably at odds with the intentions of its drafters."  United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).  We therefore conclude that the District Court did not err in holding that it had discretion to decline to award statutory damages.

C.

Plaintiffs argue that, in any event, the court abused its discretion in determining that no award of damages was appropriate here.  Considering all the facts and circumstances, we cannot agree.

-15-

Although, as it turns out, his actions were unlawful, Newell Spears had a legitimate business interest in recording the telephone conversations of his employees. That is, his store had been burgled, and he believed the burglary to be an inside job. He also was concerned about personal use of the business telephone by employees (and judging by the number of plaintiffs in this case, legitimately so), a violation of store policy. Newell Spears consulted a law enforcement officer who advised him, albeit incorrectly, that there was no problem in tapping one's own telephone. In fact, the Spearses' business and residence telephones shared the same line. Newell Spears was an amateur wiretapper, using unsophisticated equipment. Of course, none of these circumstances is a defense to the violations. Nevertheless, such facts merit consideration in the discretionary award of statutory damages.

There is no evidence of widespread disclosure or use of the plaintiffs' intercepted conversations,[8] and there were no actual damages incurred by the plaintiffs or profits earned by the Spearses from the conversations. The Spearses already have been punished in the previous litigation for the most egregious violations of the Act as a result of the substantial civil penalties, attorney fees, and costs they paid to Sibbie Deal and Calvin Lucas. As the District Court noted, Juanita Spears is in her seventies and retired, with no income other than that derived from the assets she and Newell accumulated during their working lives.

---

[8]As indicated earlier in this opinion, there was uncontroverted evidence before the District Court that a conversation between Luke Anderson and Sibbie Deal was disclosed, but that disclosure apparently is not the basis for a claim in this case.

Considering these circumstances, we hold that the District Court did not abuse its discretion in declining to award statutory damages to the intercepted plaintiffs.

D.

Plaintiffs also argue that the District Court abused its discretion in denying their motion for attorney fees and costs. In its decision to deny fees and costs, the court relied on the same reasons enumerated for the denial of statutory damages. The court also considered "that this litigation has been conducted by essentially the same counsel as were involved in the <u>Deal</u> litigation," and concluded that it would "not punish defendants with two sets of attorney's fees and costs when such piecemeal litigation as occurred here could have been easily avoided by diligent review of the evidence." <u>Reynolds</u>, 857 F. Supp. at 1348. We hold that the District Court did not err in holding that attorney fees and costs were not "appropriate relief," <u>id.</u>, in this case.

V.

The District Court is affirmed in all respects.

A true copy.

        Attest:


                CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.