## In the

## United States Court of Appeals

### For the Seventh Circuit

Nos. 06-2219 & 06-2221

DIRECTV, INC.,

*Plaintiff-Appellee*,

*v.*

DAVID BARCZEWSKI and JONATHAN WISLER,

*Defendants-Appellants*.

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:03-cv-1879 & -1930—**David F. Hamilton**, *Judge*.

ARGUED FEBRUARY 21, 2007—DECIDED MAY 13, 2010

Before EASTERBROOK, *Chief Judge*, and FLAUM and
SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. A jury concluded that
Jonathan Wisler intercepted encrypted signals from the
DirecTV satellite system without authorization and that
David Barczewski furnished devices to assist others to
steal the signals. See 18 U.S.C. §2511; 47 U.S.C. §605.
Ample evidence supports this verdict: both defendants
bought electronic gear from a merchant that advertised

its products as designed to facilitate theft of DirecTV signals, and both participated in an online discussion group, called the "Pirate's Den," whose members exchanged advice about how to decrypt DirecTV signals without paying. Both defendants insisted that the "smart cards" and associated gear they purchased had legal uses. That much is uncontested, but the jury did not have to believe defendants' claim that the gear had been put to a legal rather than an illegal use. Nor did the jury have to believe Wisler's assertion that, as a DirecTV subscriber, he had no reason to steal signals. After buying a smart card and joining the Pirate's Den, Wisler cut back to the lowest tier of service; a jury could conclude that he descrambled other programs, such as sports and movies, without paying.

Most of defendants' legal arguments are feeble. They contend, for example, that DIRECTV, Inc., the provider of DirecTV service, is not aggrieved by signal theft and therefore cannot sue under 18 U.S.C. §2520, which provides a private right of action for some violations of 18 U.S.C. §2511, an anti-interception statute. Every court of appeals that has considered this subject has held that DIRECTV is entitled to sue under §2520. See *DIRECTV, Inc. v. Webb*, 545 F.3d 837 (9th Cir. 2008); *DIRECTV, Inc. v. Bennett*, 470 F.3d 565 (5th Cir. 2006); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162 (3d Cir. 2005); *DIRECTV, Inc. v. Nicholas*, 403 F.3d 223 (4th Cir. 2005). We agree with that conclusion, as well as the related point that DIRECTV is a "person aggrieved" entitled to sue under §605. See *DIRECTV, Inc. v. Seijas*, 508 F.3d 123 (3d Cir. 2007); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 526–28

(5th Cir. 2005); see also *United States v. Norris*, 88 F.3d 462, 468–69 (7th Cir. 1996).

Nonetheless, defendants insist, an exception to §2511 makes the private right of action useless to DIRECTV. The exception reads:

> It shall not be unlawful under this chapter . . . for any person—
>
>> (i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;
>>
>> (ii) to intercept any radio communication which is transmitted—(I) by any station for the use of the general public, or that relates to ships, aircraft, vehicles, or persons in distress; (II) by any governmental, law enforcement, civil defense, private land mobile, or public safety communications system, including police and fire, readily accessible to the general public; (III) by a station operating on an authorized frequency within the bands allocated to the amateur, citizens band, or general mobile radio services; or (IV) by any marine or aeronautical communications system[.]

18 U.S.C. §2511(2)(g). Subsection (ii)(IV), which exempts "any marine or aeronautical communications system", is

the one on which defendants rely. During trial defendants' lawyer asked one of DIRECTV's witnesses whether it operated an "aeronautical communications system"; the witness answered "yes" and in so doing scuttled the case, defendants maintain.

Like the district court, we doubt that the witness was thinking about §2511(2)(g)(ii)(IV). No matter. Whether or not the witness had this statute in mind, the answer is not dispositive. Judges, not witnesses, are responsible for interpreting statutes. See *Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898, 900–01 (7th Cir. 1994). Section 2511(2)(g) as a whole deals with unencrypted communications, broadcast in the clear to promote public safety or open discourse. The phrase "aeronautical communications system" is not defined in §2511 or anywhere else in the United States Code; this is its sole appearance. Only one appellate opinion uses the phrase, and following the lead of the Federal Communications Commission—not to mention the dictionary—it understands this language to mean a system of communications to and from airplanes. See *Aeronautical Radio, Inc. v. FCC*, 928 F.2d 428, 434 (D.C. Cir. 1991). Whatever else it may be, DirecTV is not a system for issuing navigation instructions to aircraft or receiving their distress calls. DirecTV therefore is not an "aeronautical communications system" under §2511(2)(g)(ii)(IV).

Answering special interrogatories, the jury concluded that Barczewski had distributed four unauthorized decryption devices and that Wisler had intercepted DirecTV's signal for 435 days without authorization. The

judge used these answers to calculate damages. The penalty of $44,000 against Barczewski depended on §605(e)(3)(C)(i)(II): the judge awarded DIRECTV $10,000 for each device, see §605(e)(4), and $1,000 for each (vicarious) interception, see §605(a). Subsection (II) allows the court to award "for each violation of subsection (a) of this section . . . a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection . . . an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just." DIRECTV requested, and the district judge used, the low point of these ranges for each of Barczewski's violations.

Wisler's penalty of $43,500 ($100 per day of interception) was calculated under 18 U.S.C. §2520(c)(2), which says that "the court may assess as damages whichever is the greater of—(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." The judge rejected Wisler's argument for a lower figure, because *Rodgers v. Wood*, 910 F.2d 444, 448 (7th Cir. 1990), holds that the highest penalty calculated under §2520(c)(2) is mandatory. *Rodgers* leaves district judges with no discretion to exercise—as a result the court need not (indeed, must not) consider defendants' circumstances, and the jury's only role is to specify the inputs to the formula (the number of days or devices). See *BMG Music v. Gonzalez*, 430 F.3d 888, 891–93 (7th Cir. 2005).

Section 2520 was overhauled in 1986, and *Rodgers* was the nation's initial appellate decision on the question whether the statutory penalties are mandatory or permissive. More recently four other circuits have addressed the question—and all four have disagreed with *Rodgers* and held that §2520(c)(2) allows district judges not to award damages. See *Nalley v. Nalley*, 53 F.3d 649, 651–53 (4th Cir. 1995); *Dorris v. Absher*, 179 F.3d 420, 429–30 (6th Cir. 1999); *Reynolds v. Spears*, 93 F.3d 428, 433–35 (8th Cir. 1996); *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 817–18 (11th Cir. 2004). Developments that leave this circuit all by its lonesome may justify reexamination of our precedents, the better to reflect arguments that may not previously have been given full weight and to spare the Supreme Court the need to intervene. See *United States v. Corner*, 598 F.3d 411 (7th Cir. 2010) (en banc); *United States v. Carlos–Colmenares*, 253 F.3d 276 (7th Cir. 2001).

Section 2520(c)(2) says that the judge "may" award certain damages. "May" is permissive. DIRECTV contends that the permissive quality of "may" is overridden by the phrase "the greater of", but that's not sound: "the greater of" tells the judge to compute the ceiling separately under subsections (A) and (B) and then use the higher of the two (a process repeated in subsection (B), which offers two ways to set statutory damages). Telling the judge to work through all of the possibilities to see which number is highest does not compel the court to award that maximum. A phrase such as "the district court may award X or Y" would oblige the judge to use either X or Y, not some lower or intermediate number, but §2520(c)(2) does not read this way. It says

that the judge "may" award damages, then gives a formula. This is the language of discretion, not command.

*Rodgers* did not see any significance in "the greater of". Instead it looked to the language of §2520 before the 1986 amendment. The original language of §2520(c) was: "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses . . . such communications, and (2) be entitled to recover from any such person— (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher". Pub. L. 90–351, Title III, §802, 82 Stat. 223 (June 19, 1968). The panel in *Rodgers* treated the word "shall" as making the maximum award mandatory and then observed that the legislative history in 1986 did not explain why "shall" had been changed to "may". The panel continued: "In the absence of any such statement, we are hesitant to read a grant of discretion to the district courts where none had been permitted in the past." 910 F.2d at 448.

As our colleagues in other circuits have remarked, this unwillingness to give effect to a change in statutory language unless the legislative history contains a reassuring "We really mean it!" is incompatible with decisions of the Supreme Court. See, e.g., *Swain v. Pressley*, 430 U.S. 372, 378–79 (1977); *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 592 (1980) ("it would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its delibera-

tions that which is obvious on the face of a statute"). Legislative history comes into play only when necessary to decode an ambiguous enactment; it is not a *sine qua non* for enforcing a straightforward text.

The 1968 version was itself unclear: the placement of "shall" before the clause creating a private right of action sounded permissive rather than mandatory—certainly it does not command all injured parties to sue! Or it may have meant that the prevailing party "shall" receive some compensation, while leaving the amount open. "Shall" sometimes means "may" in legal texts, which is why good drafters use "must" for mandates. See *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432–33 n.9 (1995); Bryan A. Garner, *A Dictionary of Modern Legal Usage* 939–42 (2d ed. 1995). The change from "shall" to "may" could have been designed to make explicit a permissive meaning that had been there all along. Whether or not "may" in the 1986 revision was designed as a change, however, does not matter; all we need to do is acknowledge that "may" is permissive.

*Rodgers* gave a second reason:

> in amending the damages section, Congress recognized that the new penalty structure would be too severe for some violations of the Act and addressed that concern by creating an exception to the penalty structure for the interception of certain private satellite video communications. 18 U.S.C. §2520(c)(1). This exception originated in concerns expressed by Senators Laxalt, Grassley, DeConcini and Simpson during subcommittee

consideration "about the bill's penalty structure for the interception of certain satellite transmissions by home viewers," and it culminated in an amendment to the bill offered by Senator Grassley. S. Rep. No. 99–541, 99th Cong. 2d Sess. 6–7, *reprinted in* 1986 U.S. Code Cong. & Admin. News 3555, 3560–61. The fact that Congress chose to address concerns about the severity of the new penalty structure by creating a specific exception for certain actions suggests that Congress intended to limit the types of violations for which the penalties could be avoided. This conflicts with and ultimately defeats an inference that Congress intended to grant district courts the discretion to decide the cases in which the more severe penalties should attach.

910 F.3d at 448. Like the four other circuits that have considered this subject since *Rodgers*, we find it hard to infer from graduated awards that the higher maximum must be a minimum.

To show the context, here is the current version of §2520(c) in full:

(1) In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the

conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

(A) If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.

(B) If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

(2) In any other action under this section, the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

Section 2520(c)(1) deals with signals sent in the clear and not intercepted for a commercial or illegal purpose; §2520(c)(2) addresses other situations, such as the interception of DirecTV's encrypted signals. Subsection (c)(1) sets lower damages, doubtless because Members of Congress thought the wrongdoing less serious. To say that the penalty for the non-commercial interception of unscrambled signals cannot exceed $1,000 (or actual loss) does not imply that the penalty for intercepting scrambled signals must be at least $10,000. The difference in perceived seriousness is reflected in the different maximum penalties, not in a mandate to impose the highest possible penalty.

One more context is worth considering: the relation between 18 U.S.C. §2520(c) and 47 U.S.C. §605(e). Both address aspects of signal piracy. Section 605(e)(4) covers Barczewski (who distributed devices that others could use to decrypt signals), while Wisler (who watched pirated programs on his own TV) comes within both §605(a), (e)(3)(C)(i)(II) and §2520(c)(2). Section 605(e) affords discretion within ranges (we set out the language above). Section 2520(c)(2) gives caps rather than ranges. It is difficult to see why district judges would have discretion when a penalty is determined under §605(e) but not when it depends on §2520(c). Section 605(e) took its current form in 1988, two years after the amendment that gave §2520(c) its current text. Although it is hazardous to assume that one Congress "knows" what another did, the discretionary ranges established for §605(e) in 1988 do make more sense if they exemplify a belief that statutory damages under §2520(c) have a discretionary component; otherwise there is a jarring

clash between two statutes covering overlapping subject matter.

We overrule the portion of *Rodgers* holding that award of the maximum damages specified in §2520(c)(2) is mandatory.[†] We conclude that the district court has discretion not to award statutory damages under the statutory formula.

Having said this, we add a few words about one question we are *not* deciding: Whether a judge has discretion to award damages under §2520(c), but less than the maximum. Some of the four other circuits that have given "may" its natural reading might have assumed that the only choice is between $0 and the statutory maximum, but none actually holds that. Depriving the judge of discretion to choose an intermediate outcome could disserve both side's interests. A judge who thinks that some damages are appropriate, but that the maximum is too high for the defendant's financial or other circumstances, would be driven either to award $0 (sacrificing deterrence and compensation) or the maximum (which may impose an unwarranted burden on the defendant's family).

The fourth circuit, which read "may" in *Nalley* to allow judges to omit damages, recently reversed a district judge who exercised that discretion in a signal pirate's

---

[†] This opinion has been circulated to all active judges under Circuit Rule 40(e). No judge favored a hearing en banc. Circuit Judge Hamilton did not participate in the consideration or decision of this appeal.

favor without giving serious consideration to the adverse effects of letting misconduct go unsanctioned. See *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 326–28 (4th Cir. 2008). And the fact that subsection (c)(1), which deals with less serious violations, requires some penalty (recall that (c)(1) uses "shall" while (c)(2) uses "may"), implies that it would often be an abuse of discretion to give the more serious violators subject to (c)(2) a free pass. Yet if the need to impose *some* penalty leaves no alternative to the statutory maximum, we are back to *Rodgers* in practical effect, though through a different interpretive route.

Section 605(e), which covers not only persons who pirate signals for their own use but also persons who help others steal encrypted signals (a more serious transgression), allows district judges discretion over the amount of the penalty. Perhaps §2520(c)(2) should be read the same way by treating "may" as applicable to all of the ensuing language, so that the greater power to pretermit *any* penalty entails the lesser power to pretermit *some* of the potential penalty. Or perhaps a district judge should first make any appropriate award under §605(e) and turn to §2520(c) only if §605(e) is unavailable or does not authorize an adequate penalty. By treating §605(e) and §2520(c) together, a judge may be able to achieve appropriate damages even if §2520(c) imposes an all-or-none choice. That is not a question we need address today. The district court should have the first crack at determining the appropriate penalty for Wisler's conduct.

Defendants maintain that, because they are persons of ordinary means, high penalties necessarily are an abuse of discretion. Yet the statute does not require judges to set penalties according to wealth, and we held in *BMG Music* that serious penalties for the theft of intellectual property are not confined to the wealthy. One economically sound way to determine a penalty is to divide the harm done by the probability of apprehension. See Gary S. Becker, *Crime and Punishment: An Economic Approach*, 76 J. Pol. Econ. 169 (1968), a theory of sanctions that played a role in his receipt of a Nobel Prize in 1992. The approach has been widely used, including (for example) the construction of tables in the Sentencing Guidelines. See *United States v. Turner*, 998 F.2d 534 (7th Cir. 1993). Thus if signal theft enables a person to avoid paying $200 in fees to DirecTV, and only 1 in 50 signal thieves is caught, the appropriate penalty would be $10,000. If the loss is lower, or the probability of being caught greater, the appropriate penalty goes down; if the loss is greater, or the probability of detection lower, the appropriate penalty goes up. Statutory damages of $100 per day could well be apt, if the probability of detection is low enough. The wrongdoer's wealth plays no role in such an approach.

District judges have discretion to consider other reasoned approaches too; there is latitude in the word "may." The district judge used that latitude to give Barczewski the lowest available penalty. But judges need not go easy on hourly wage-earners who decide to steal TV signals, any more than they need go easy on people who choose other forms of theft to supplement

the family budget. People who do not want to pay the market price for goods or services must refrain from theft and cannot complain if the price of crime is steep.

Defendants make a number of other arguments, only one of which requires even brief comment. Contending that DIRECTV had made a frivolous post-trial motion for a protective order, defendants asked a magistrate judge to award sanctions. The magistrate judge declined. Because this subject was never presented to or passed on by the district judge, it is not included in the final judgment and cannot be reviewed in this court. Magistrate judges neither grant nor deny motions such as the one defendants made; all they can do is recommend a disposition to the district judge. See *Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994). In the absence of a consent under 28 U.S.C. §636(c)(1), only the decisions of district judges are open to review in a court of appeals, and defendants' failure to follow through with a request to the district judge means that there is no decision to be reviewed.

The judgment is affirmed except with respect to the award of statutory damages against Wisler, which is vacated. His case is remanded for further proceedings consistent with this opinion.